# EXHIBIT J

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN RE: BIOMET M2a-MAGNUM   )
HIP IMPLANT PRODUCTS       )
LIABILITY LITIGATION       )
(MDL 2391),                )
                           ) Case No. 3:12-MD-2391
_____)
                           )
                           )
THIS DOCUMENT APPLIES TO   )
ALL CASES                  )
                           )

CONFIDENTIAL VIDEOTAPED DEPOSITION:

As Given Through

JEFF GLOCK

## Page 2

The videotaped deposition upon oral examination of JEFF GLOCK, a witness produced and sworn before me, Tina M. Heideman, CSR, Notary Public in and for the County of Porter, State of Indiana, taken on behalf of the Plaintiffs at LaDue, Curran & Kuehn, 205 W. Jefferson Boulevard, South Bend, Indiana, on Thursday, June 30, 2016, at 9:18 a.m., pursuant to the Federal Rules of Civil Procedure.

* * * * *

## Page 3

```
 1         APPEARANCES
 2   FOR THE PLAINTIFFS:
 3       JUSTIN PRESNAL, ESQ.
         FISHER BOYD JOHNSON & HUGUENARD LLP
 4       2777 Allen Parkway, 14th Floor
         Houston, Texas  77019
 5       justinp@fisherboyd.com
 6   FOR BIOMET:
 7       TRENT J. SANDIFUR, ESQ.
         TAFT STETTINIUS & HOLLISTER LLP
 8       One Indiana Square, Suite 3500
         Indianapolis, Indiana  46204
 9       tsandifur@taftlaw.com
10   ALSO PRESENT:
11       David Dominiak, Videographer
```

## Page 4

INDEX OF EXAMINATION
                                    PAGE
EXAMINATION
  BY MR. PRESNAL                      8

INDEX OF PLAINTIFFS' EXHIBITS
NUM.    DESCRIPTION                  PAGE
Exhibit 1   Document entitled Jeff Glock Work   11
            History
Exhibit 2   Document entitled Biomet MoM        29
            Products
Exhibit 3   Document entitled                   34
            RingLoc Acetabular Series
Exhibit 4   Brochure for M2a-Taper for          43
            surgeons
Exhibit 5   Brochure for M2a-Taper for          49
            patients
Exhibit 6   Exceed ABT Acetabular System        56
            Product Rationale
Exhibit 7   Marketing document with             65
            Mary Lou Retton on the cover
Exhibit 8   Press released issued by Biomet     66
            regarding the Mary Lou Retton
            campaign
Exhibit 9   Patient testimonial                 69
Exhibit 10  Document entitled Biomet            74
            Orthopedics, Inc., Strategic
            Outlook, Confidential to Dan Hann
Exhibit 11  Documents from Boyden and           77
            Youngblutt.  The first page is
            entitled Mary Lou Retton Campaign

Page 209

1  MR. SANDIFUR: Objection, form.
2  THE WITNESS:
3  A. Yeah. And when you showed me those three, if you
4     look -- and I'm sure you have access to them -- we
5     had over 40 that we were tracking clinical results
6     from different studies around the world -- it had
7     nothing to do with us -- to track those Magnum
8     results to make sure that we were, like you said,
9     being up front and honest about what is going on
10    with our products.
11    MR. PRESNAL:
12 Q. But that is the FDA study for clinical success of
13    the taper, the FDA study for clinical success of
14    the M2a-38, the FDA study for clinical success of
15    the M2a-Magnum, right?
16 A. Right. And that's when -- I'm not in the clinical
17    department. I don't run that area. So that's
18    something that would be -- need to be asked, I
19    think, of the clinical department.
20 Q. You're talking about studies that might be done at,
21    say, Dr. Lombardi's facility where you get him to
22    do the clinical followup and publish papers, right?
23 A. Well, that in conjunction with the Australian
24    registry, you know, the different registries around
25    the world that are totally -- they have nothing to

Page 210

1     do with us. I think you need a combination of
2     both. Yes, would Lombardi do things -- studies
3     like that, yes.
4  Q. We haven't talked about -- we haven't talked about
5     registries, but they do contain important data,
6     don't they?
7  A. Yes.
8  Q. And the term clinical studies could describe a
9     number of different things. These types are ones
10    that are reported and sort of, you know, I guess,
11    for lack of a better term, official by the FDA,
12    right?
13    MR. SANDIFUR: Objection, form.
14    THE WITNESS:
15 A. Yes.
16    MR. PRESNAL:
17 Q. But there are others that are done sort of -- I'll
18    use the term privately. A Biomet surgeon might
19    decide on his or her own to follow a cohort of
20    patients and report on the success rate of that
21    particular device, right?
22 A. And that happens with all companies, all --
23 Q. They don't have to get your approval to do that?
24 A. No.
25 Q. Some of them do, right?

Page 211

1  A. Yeah. Most of them don't. But --
2  Q. Some of them are compensated by you to do it?
3  A. Some can be compensated, yes --
4  Q. Right.
5  A. -- not all, but some can, yes.
6  Q. Or some can go do it on their own?
7  A. Yes.
8  Q. And if they can get a paper published, then it gets
9     published, and people have access to that
10    information, right?
11 A. Yes.
12 Q. But if they wanted to go look and see what the FDA
13    clinical trials website says about it, at least
14    from these three that I showed you, there's no data
15    available to anybody who wants to know?
16    MR. SANDIFUR: Objection, form.
17    THE WITNESS:
18 A. And I'm not aware -- that's -- that's the first
19    I've seen those. So again, I'm not in the clinical
20    department. So that would be a question for them.
21    MR. PRESNAL:
22 Q. Has Mary Lou Retton's hip been revised?
23 A. I don't know.
24 Q. Have you heard anything?
25 A. I've heard.

Page 212

1     MR. SANDIFUR: Objection, form.
2     MR. PRESNAL:
3  Q. What have you heard?
4     MR. SANDIFUR: Objection, form.
5     THE WITNESS:
6  A. I mean, you know, in our industry, it's -- but I
7     don't know that 100 percent, and that's why I don't
8     say it. But, yeah, we do hear, obviously, you
9     know --
10    MR. PRESNAL:
11 Q. You've heard that she's been revised?
12 A. I've heard that, but I don't -- I can't verify that
13    at all.
14 Q. I understand.
15 A. And I don't want to speculate on her, you know --
16    on her being, you know --
17 Q. Fair enough. You gave me an honest answer.
18 A. Yep.
19 Q. And I appreciate that.
20 A. Yep.
21 Q. I won't hold it as a fact, but I appreciate you
22    acknowledging to me that the rumor in the industry
23    is that she's had it revised.
24    Exhibit 9 that we talked about earlier, that
25    was the -- the Mary Lou bio on the Biomet website.

Page 213

1  Do you remember that one?
2  A. Yes.
3  Q. And remember, this is the one we talked about --
4     the earlier ad specifically references the fact
5     that she got an M2a-Magnum hip, right?
6  A. Right.
7  Q. This bio at least as of April 11th, 2016 does not
8     specify the type of hip implant that she received,
9     correct?
10 A. Correct.
11       MR. PRESNAL: Am I on 30 now?
12       THE REPORTER: Yeah.
13       MR. PRESNAL:
14 Q. This is a document that I printed off the Biomet
15    website this morning, the same --
16       MR. SANDIFUR: The last one was 30.
17       MR. PRESNAL: Oh.
18       THE REPORTER: Exhibit 31. Sorry.
19       MR. SANDIFUR: No, no problem.
20       MR. PRESNAL: Oh. It wasn't my fault that
21    time. I was tricked. 31. I'm glad you're keeping
22    up with it.
23 Q. Okay. Exhibit 31, excuse me, is a document I
24    printed off the Biomet website this morning. And
25    if you see -- if you compare Exhibit 9, the URL,

Page 214

1     the internet address at the bottom of 9, to
2     Exhibit 31 -- do you see down there?
3  A. Uh-huh.
4  Q. It now says that -- no content found. Were you
5     involved in the decision to remove
6     Mary Lou Retton's biography from the website?
7  A. No.
8  Q. Did you know it had been removed?
9  A. No.
10 Q. What was the exhibit for the -- the marketing
11    company portfolio? Remember the one --
12 A. Yeah.
13 Q. -- that B&Y company? That's it. No, that's not
14    it.
15       MR. SANDIFUR: It's 11.
16       THE WITNESS: 11?
17       MR. PRESNAL:
18 Q. Yeah. It looks like that (indicating) at the top.
19 A. There you go.
20 Q. There you go. Okay. Exhibit 11.
21       MR. PRESNAL: What am I on now, 32?
22       THE REPORTER: Yes.
23       MR. PRESNAL:
24 Q. Exhibit 32 I will represent to you is -- and you
25    can compare it to Exhibit 11 -- the exact same web

Page 215

1     address as the B&Y portfolio that was printed some
2     time ago. It's gone now. Did you know about that?
3  A. I did not.
4  Q. So I can assume then you were not involved in any
5     decision to tell them to remove it from their
6     website or anything like that?
7  A. No.
8        MR. PRESNAL: Mr. Glock, I don't think I have
9     any more questions for you today. I appreciate
10    your time, your honesty, and your candor.
11       THE WITNESS: Thank you. I appreciate it.
12       MR. SANDIFUR: No questions.
13       THE VIDEOGRAPHER: Going off the record, the
14    conclusion of the videotaped deposition of
15    Mr. Jeff Glock at 2:27 p.m.
16       THE REPORTER: Signature?
17       MR. PRESNAL: Does he want to review and sign?
18       MR. SANDIFUR: Yes.
19       (The deposition concluded at 2:27 p.m.)

Page 216

1  STATE OF INDIANA )
                    )
2  COUNTY OF PORTER )
3
4        I, Tina M. Heideman, CSR, a Notary Public in
5  and for said county and state, do hereby certify that
6  the deponent herein, JEFF GLOCK, was by me first duly
7  sworn to tell the truth, the whole truth, and nothing
8  but the truth in the aforementioned matter;
9        That the foregoing deposition was taken on
10 behalf of the Plaintiffs; that said deposition was
11 taken at the time and place heretofore mentioned
12 between 9:18 a.m. and 2:27 p.m.;
13       That said deposition was taken down in
14 stenograph notes and afterwards reduced to typewriting
15 under my direction; and that the typewritten
16 transcript is a true record of the testimony given by
17 said deponent;
18       And thereafter presented to said witness for
19 signature; that this certificate does not purport to
20 acknowledge or verify the signature hereto of the
21 deponent.
22       I do further certify that I am a disinterested
23 person in this cause of action; that I am not a
24 relative of the attorneys for any of the parties.
25       IN WITNESS WHEREOF, I have hereunto set my