**UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI EASTERN DIVISION**

| | |
|---|---|
| MARY BAYES and PHILIP BAYES,<br><br>  Plaintiffs,<br><br>v.<br><br>BIOMET, INC., BIOMET ORTHOPEDICS, LLC, BIOMET U.S. RECONSTRUCTION, LLC, BIOMET MANUFACTURING, LLC f/k/a BIOMET MANUFACTURING CORP.,<br><br>  Defendants. | Case No. 4:13-cv-00800-SRC |

**PLAINTIFFS' RESPONSE TO
BIOMET'S MOTIONS IN LIMINE**

Plaintiffs submit the following Response to Biomet's Motions in Limine:

**MOTION NO. 1.  OTHER COMPLAINT FILES, CLAIMS AND LAWSUITS**

*First*, Biomet contends evidence of other complaint files, claims and lawsuits is irrelevant and inadmissible hearsay. Biomet's argument completely misses the mark. This evidence is undoubtably relevant as Plaintiff contends the defect in *all* metal-on-metal hip implants are defective for the same reason. The cases cited by Biomet to support its position are not helpful. For example, Biomet cites *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 52 F.Supp.2d 1084, 1089 (E.D. Mo. 1999), *aff'd*, 243 F.3d 441 (8th Cir. 2001), yet failed to acknowledge that evidence of other accidents involving the alleged defect was excluded because notice was not at issue since the defendant admitted it knew of the seat back failure. That is not the case here. Moreover, in *Skibniewski v. Am. Home Products Corp.*, 99-0842, 2004 WL 5628157, (W.D. Mo. Apr. 1, 2004),

1

the court excluded evidence of other lawsuits as plaintiff was attempting to use the evidence for purposes of collateral estoppel, though even by defendant's admission, "such evidence may be relevant to the issue of punitive damages." 2004 WL 5628157, at *11. Although the court in *C.C. through Ginnever v. Suzuki Mfg. of Am. Corp.*, 4:16CV01271 ERW, 2018 WL 4504687, at *2 (E.D. Mo. Sept. 20, 2018), found the claims of other incidents substantially related, the evidence was deemed hearsay and excluded as the claims were not submitted to the defendant. Here, the complaint files, claims, and lawsuits were submitted to Biomet so there is no issue of hearsay. Finally, the court granted defendant's motion *in limine* in *Rodrick v. Wal-Mart Stores East, L.P.*, 2009 WL 10672554 (W.D. Mo. 2009), as it was not opposed by the plaintiff. The cases cited by Biomet are distinguishable from the instant case and fall short of showing the complaints and claims are irrelevant or hearsay. This evidence is clearly relevant to the instant case.

*Second*, Biomet contends evidence of complaints, claims and lawsuits related to (1) other hip implants, (2) foreign documents, and (3) other M2a-Magnum cases are not substantially similar to Mrs. Bayes' case and should be excluded. The Eighth Circuit recognized the following fundamental principles relating to the admissibility of evidence of other incidents in *Adams v. Toyota Motor Corp.*, 867 F.3d 903 (8th Cir. 2017):

- "There are no hard or fast rules as to what degree of similarity there must be to make the evidence admissible." 867 F. 3d at 913
- In determining the admissibility of other similar incident evidence, the appropriate focus is on all of the "circumstances" surrounding the other similar incident evidence, not necessarily any specific similarity. 867 F. 3d at 913
- The inquiry into whether other incident evidence occurred under similar circumstances to those in the instant case is case-specific, and no one factor is dispositive. 867 F. 3d at 913
- Other similar incident evidence "may be relevant to prove notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." 867 F.3d at 911.
- Another similar incident need not "occur in precisely the same manner in order to qualify as being substantially similar." *Adams*, 867 F. 3d at 911.

2

1. Other Hip Implants[1]

Biomet argues other hip replacement products are not substantially similar to Mrs. Bayes' case. One point of clarification is that to the extent Plaintiff offers complaint files, claims or lawsuits regarding other hip replacement products, it would only be related to other metal-on-metal hip products. Biomet's contention that the M2a-Magnum is not substantially similar to other metal-on-metal products is disingenuous. As the Court well knows, the similarities between this specific product subset are undeniable. Thus, evidence of failures in substantial numbers of other manufacturers' MoM hip implants is relevant for the same reasons that evidence concerning Defendants' other MoM implants is relevant. The common characteristic among all these devices is the metal-on-metal contact between the cobalt chromium articulating surfaces, which causes the production of metal wear debris and metal ions, and results in the same injuries sustained by Plaintiffs. This common failure is sufficient to make these other failures "substantially similar" and admissible. [2]

Biomet simply ignores the relevant similarity between these products which is the design feature the products share, i.e. the metal-on-metal bearing surface, and the very issue Plaintiff contends is what makes the product defective. [3] This common feature is sufficient to make evidence related to other products "substantially similar" and admissible.

---

[1] Plaintiffs also discuss this issue in response to Motion 7, below.
[2] Additionally, to the extent that Defendants had knowledge of the failures of their competitors' MoM hip implants prior to a particular Plaintiff's implantation surgery, such evidence is also relevant to notice.
[3] Defendants' hypocrisy in this argument should not be lost on the Court. The very 510(k) clearance process Defendants used with the FDA to get the M2a-Magnum to market trumpeted the "substantial equivalence" to other metal-on-metal hips, including Biomet's M2a-38 and devices by Wright Medical. Biomet also claimed that the "technological characteristics (material and design) are similar to predicate devices *See* Exhibit 1, Biomet Magnum 510(k) Summary of Safety and Effectiveness. Biomet cleared the M2a-38 through the 510(k) process by claiming it was substantially similar to DePuy's Pinnacle MoM hip, the McKee Farrar (a device on the market before 1976), and its own M2a-Taper system. *See* Exhibit 2, Biomet M2a-38 510(k) Summary of Safety and Effectiveness  In short, Biomet chose to represent to the FDA that the M2a-Magnum was substantially similar to its own and other metal-on-metal hips, which said products got on the market through claims of substantial likeness to other metal-on-metal hips. The failed history of

2. Foreign complaint files

Biomet requests exclusion of evidence of foreign complaints, claims, or lawsuits on the basis of relevance and jury confusion. The cases cited by Biomet relate to foreign regulatory action and exclude this evidence because of the varying standards between countries. At this time, Plaintiff is not seeking to introduce evidence as to what action other regulatory agencies ultimately did or did not take;[4] rather Plaintiff is simply seeking to introduce evidence relating to Biomet's metal-on-metal hip failures and tissue destruction, whether it comes from the United States or abroad (including correspondence with or presentations to foreign regulatory bodies). This evidence satisfies the substantial similarity test. Biomet provides no support how such evidence would be prejudicial. Thus, this evidence is permissible.[5]

3. M2a-Magnum complaint files

In this case, evidence of other incidents involving the M2a-Magnum is admissible because those incidents satisfy the substantial similarity test as they involve the same device and similar injuries. Moreover, Biomet's trial brief shows Biomet will argue that Mrs. Bayes' injuries were caused by something other than its defective product. Plaintiff must be permitted to rebut this

---

those substantially equivalent devices – all sharing the design choice of using metal-on-metal articulating surfaces – is certainly relevant.

[4] If Plaintiff seeks to introduce such evidence, Plaintiff will request the Court to rule on the issue outside of the jury.

[5] *See In re Levaquin Products Liab. Litig.*, 08-1943, 2010 WL 4676973, at *4–5 (D. Minn. Nov. 9, 2010) (denying motion to exclude foreign regulatory action evidence on grounds it speaks to notice and motive); *Tobin v. SmithKline Beecham Pharms.*, 00–0025, 2001 WL 36102165, at *1 (D. Wyo. May 18, 2001)(denying motion in limine to exclude foreign labels because they may be relevant to knowledge or adequacy of warning); *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, 09-2100, 2011 WL 6302287, at *2, 2011 U.S. Dist. LEXIS 147935, at *5–6 (S.D. Ill. Dec. 22, 2011) (denying motion to exclude foreign regulatory action and labeling evidence on grounds it would assist jury in finding out what defendant knew and when).

argument with evidence of other cases involving the M2-Magnum where the same or similar injuries occurred.

Evidence of other incidents involving the M2a-Magnum is also relevant to establish that Biomet had notice of a problem, supporting the negligent design defect claim. Specifically, Biomet was aware that their M2a-Magnum implants were failing at unacceptably high rates and that the injuries caused by these failures were severe. The fact that Biomet was aware of these failures, yet continued to sell the M2a-Magnum and mislead the public as to its safety and efficacy, is directly relevant to the issue of Biomet's negligence and for the jury's consideration of whether and to what extent punitive damages should be assessed against Biomet. Thus, evidence of similar incidents involving the M2a-Magnum is directly relevant to the issues to be decided by the jury in this case. Moreover, the probative value of such evidence substantially outweighs any potential prejudice that may result from its admission.

In medical-device defect cases, federal courts have held that evidence of other incidents is substantially similar where the other incidents involved the same device and similar injury.[6] Contrary to Biomet's argument that this evidence will "confuse and mislead the jury" about its liability in this case, substantially similar incidents are relevant and admissible.[7]

---

[6] *See, e.g., Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 695 (7th Cir. 2007); *Kendall v. Bausch & Lomb Inc.*, No. CIV 05-5066-JLV, 2011 WL 860447, *1, 6 (D. S.D. Mar. 9, 2011); *In re Mentor Corp. ObTape Transobturator Sling Products Liability Litig.*, 2010 WL 2196632, *1 (M.D. Ga. May 28, 2010). *Cf. Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 613, 625-26 (8th Cir. 1983) (in suit alleging wrongful death from toxic shock syndrome, evidence of complaints manufacturer received from other consumers concerning its tampons was admissible to show notice, causation, and the product's dangerousness; "In this case, consumer complaints need not match the exact scientific description of TSS in order to show substantial similarity between other consumers' illnesses and Mrs. Kehm's illness. Procter & Gamble had ample opportunity, of which it availed itself, to rebut the force of the other complaints by pointing out dissimilarities between the complainers' symptoms and the symptoms of TSS. It was up to the jury to decide what weight to give the complaints from other consumers.").

[7] Plaintiff is not relying solely on the existence of other M2a-Magnum claims here. Plaintiff will submit extensive objective evidence and competent expert testimony at trial establishing that the M2a-Magnum is defective; the evidence of other M2a-Magnum claims is only a portion of such evidence.

Contrary to Biomet's argument that this evidence will "confuse and mislead the jury" about its liability in this case, substantially similar incidents are relevant and admissible.[8] Plaintiff should be permitted to offer evidence of other incidents, complaints, claims, and lawsuits involving the M2a-Magnum at trial.

**MOTION NO. 2. <u>M2A-MAGNUM MARKETING MATERIALS AND REFERENCES TO MARY LOU RETTON</u>**

Biomet seeks to exclude marking materials and references to Mary Lou Retton because these materials did not impact Dr. Martin's decisions. Biomet further argues Plaintiff is attempting to "back door in evidence of Ms. Retton's personal lawsuit and settlement". This is false. Plaintiff has no intention, and does not challenge Biomet's motion to the extent that it is seeking to preclude evidence of Ms. Retton's personal lawsuit and settlement. However, the marketing and promotional materials displaying Ms. Retton are relevant and admissible.

Albeit Biomet's assertion, there is evidence that Plaintiff's implanting surgeon, Dr. Martin, relied on Biomet's misleading marketing materials because he believed what the misleading marketing materials conveyed. Moreover, at least one of Mrs. Bayes' treating physician recalls Ms. Retton's presence in marketing materials and at conferences. The jury may determine this evidence specifically influencing treating doctors' decision making on treatment for Mrs. Bayes. In addition, these marketing and promotional materials and tactics are relevant to show that Biomet knew the M2a-Magnum was defective, but failed to share this information with the public. These marketing materials are also relevant for punitive damages as they show that Biomet intended to promote and sell this product in such a way as to maximize its own profits at the expense of the

---

[8] Plaintiff is not relying solely on the existence of other M2a-Magnum claims here. Plaintiff will submit extensive objective evidence and competent expert testimony at trial establishing that the M2a-Magnum is defective; the evidence of other M2a-Magnum claims is only a portion of such evidence.

public's health. These documents show Biomet's conscious disregard for the safety of others and are admissible.

> MOTION NO. 3.    **EVENTS, DOCUMENTS, AND STATEMENTS UNRELATED TO PLAINTIFFS THAT POST-DATE MRS. BAYES' APRIL 28, 2008 LEFT HIP IMPLANT SURGERY**

For purposes of showing a design defect (as opposed to notice) and causation, it makes no difference *when* a metal-on-metal hip failed.[9] Other evidence relating to design defect and causation are relevant for the same reasons, and under the same circumstances, regardless of whether the other failure occurred before or after Plaintiff's device was implanted. In other words, Plaintiffs should not be precluded from using evidence of the Magnum's design defect that came into existence after 2008.[10] For example, the fact that there is a currently a general consensus in the medical and orthopedic community that design choice of metal-on-metal components in total hip replacements should never be made again given the wake of destruction it has left behind is certainly relevant to the question of whether the M2a-Magnum is unreasonably dangerous. Simply put, Missouri law does not place a time restriction on the evidence that can be used to prove a strict liability design defect claim, so Plaintiffs should be allowed to introduce evidence of the defective nature of the M2a-Magnum arising throughout the history of the product, regardless of whether the evidence existed at the time Biomet manufactured it. *See, e.g., Burke v. Deere & Co*., 6. F.3d 497 (8th Cir. 1993) (finding it proper to admit post-injury evidence for the issues of defect and

---

[9] For Plaintiffs' strict liability design defect claim, the case for the relevance of post-2008 material is even stronger, because there is no actual or constructive knowledge requirement component to prove the claim under Missouri law.

[10] It is also worth noting that Biomet's arguments are premised on the notion that the date of Mrs. Bayes' original implant surgeries is the determinative date. Biomet's argument ignores the fact that the M2a-Magnum was present in Mrs. Bayes' body for over six years. Biomet's conduct and its representations during this collective six-year period is absolutely relevant to the question of whether Plaintiff could have suffered less tissue and muscle damage and undergone fewer surgeries had Plaintiff known of the defective nature of the product earlier.

7

causation under Fed. R. Evid. 401). *See also*, *Eghnayem v. Bos. Sci. Corp.,* 873 F.3d 1304, 1316 (11th Cir. 2017); *Curbow v. Nylon Net Co., Inc.*, 07-3106, 2008 WL 11338065, at *2 (W.D. Mo. Sept. 5, 2008); *Mahaney ex. rel. Kyle v. Novartis Pharmacueticals Corp.*, 835 F.Supp. 2d, 299, 313 (W.D. Ky. 2011); *Stinson v. E.I. DuPont De Nemours and Co.*, 904 S.W.2d 428, 432-33 (Mo. App. 1995); *Pollard v. Ashby*, 793 S.W.2d 394 (Mo. Ct. App. 1990).

Biomet further contends evidence relating to a 2016 FDA inspection, product withdrawals and communications with surgeons and IFUs that post-dates Mrs. Bayes' implantation surgeries must be excluded because such evidence is a subsequent remedial measure inadmissible under Rule 407. First, when subsequent remedial measures are undertaken because they are required by a governmental authority, then Rule 407 does not apply to exclude the remedial measures from evidence. *See O'Dell v. Hercules,* 904 F.2d 1194, 1204 (8th Cir. 1990) ("An exception to Rule 407 is recognized for evidence of remedial action mandated by superior governmental authority…."); *see also, In re Levaquin Products Liab. Litig.*, MDL 08-1943, 2010 WL 4882595 *1 (D.Minn. November 24, 2010); *Bartlett v. Mutual Pharmaceutical Co. Inc.*, 08-358, 2010 WL 3092649 *2 (D.N.H. August 2, 2010). Second, Rule 407 is inapplicable where there is a strict liability claim, which exists here. *Porchia v. Design Equip. Co.,* 113 F.3d 877, 880 (8th Cir. 1997). What is more, Biomet did not stop selling the device as a "remedial" measure to mitigate damage done by a dangerous product. *See Notes of Advisory Committee on Proposed Rules*, Fed. R. Evid. 407 (noting that Rule 407's exclusion of evidence "rests on a social policy of encouraging people to take…steps in furtherance of added safety.") Rather than taking the M2a Magnum off the market in furtherance of safety, Biomet made a "business decision" to stop selling the device because of declining sales and the too-high cost of doing the studies required to keep it on the market. *See* Exhibit 3, Excerpt of Andrew Trickle Deposition, 75:17; 76:9-20. It discontinued the

product because it did not want to pay for the study that would allow it to stay on the market per FDA requirements. The evidence is therefore relevant and admissible. *See Rozier v. Ford Motor Co.,* 573 F.3d 1332, 1343 (8th Cir. 1978).

Finally, such evidence is additionally relevant to Plaintiffs' punitive damages claim as it is relevant to Biomet's egregious conduct and disregard for patient safety. The longer Biomet kept the M2a-Magnum on the market, the more people's health it disregarded.

**MOTION NO. 4.** **BIOMET'S DEFERRED PROSECUTION AGREEMENTS WITH THE JUSTICE DEPARTMENT AND RELATED DOCUMENTS**

Biomet next contends that Plaintiffs should be prohibited from making reference to Biomet's Deferred Prosecution Agreement (DPA). Biomet twice reached DPAs with the federal government relating to charges it bribed doctors to implant their metal-on-metal hips over cheaper and safer alternatives. In the DPA, Biomet agreed to change its practices going forward while admitting no wrongdoing.[11] Federal courts have uniformly held that admissions in a plea agreement are admissible as an exception to the hearsay rule. *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) ("Taken together, the facts recited, most of which come right out of the Douglas's plea agreement, which was admissible though hearsay, Fed. R. Evid. 803(22), and which the District Court properly took judicial notice under Fed. R. Evid. 201"); *Slatkin v Neilson*, 525 F.3d 805 (9th Cir. 2008) (plea agreement and admissions in it were admissible as exception to hearsay rule); *United States ex rel. Miller v. Bill Harbert International Court Inc.*, 608 F.3d 871 (D.C. Cir. 2010) (upholding admission of co-defendant's guilty plea); *Wiand v. Dancing $, LLC*, 919 F. Supp. 2d 1296, 1312 (M.D. Fla. Jan. 23, 2013) ("[A] defendant's admissions in a guilty

---

[11] The DPA resulted in a change to how Biomet compensated Dr. Cuckler, one of Biomet's chief orthopedic surgeon designers for the M2a-Magnum.

9

plea proceeding and in a plea agreement that is part of a guilty plea carry 'veracity safeguards' exceeding a deposition"). This evidence is clearly relevant on the issue of punitive damages as it shows Biomet's conscious disregard of the safety of others by bribing doctors to put in Biomet's metal-on-metal hips when safer alternatives existed. As Biomet's CEO admitted, "Biomet was not completely without sin or else we would have not settled."[12]

### MOTION NO. 5. ALLEGED RISKS AND COMPLICATIONS OF THE M2A-MAGNUM THAT PLAINTIFF DID NOT EXPERIENCE

Biomet asks the Court to exclude evidence that the M2a-Magnum can cause cold welding, taper corrosion, infections or systematic complications and malignancies because according to Biomet, Mrs. Bayes did not experience these complications. With the exception of cold welding, Plaintiff has in fact experienced some of these complications. Nonetheless, even if Mrs. Bayes had not experienced any of these complications, she could still suffer from (and has a fear of developing) these issues in the future, evidence which directly supports her non-economic damages claim. Unfortunately for Mrs. Bayes, she not only fears about developing complications in the future, but has also suffered from these problems Biomet is contending she did not experience. This evidence should not be excluded.

### MOTION NO. 6. FOREIGN REGULATORY ACTIONS, PRESENTATIONS, AND COMMUNICATIONS

Biomet again seeks to preclude evidence about foreign regulatory actions, presentations and communications. At this time, Plaintiff is not opposing Biomet's motion to the extent that it seeks to preclude evidence regarding foreign regulatory actions.[13] If Plaintiff seeks to introduce

---

[12] *See* Exhibit 4, Excerpt of Jeffrey Binder Deposition, 126:12-18.

[13] Biomet cites *Hurt v. Coyne Cylinder Co.,* 956 F.2d 1319, 1327 (6th Cir. 1992) and *Deviner v. Electrolux Motor,* 844 F.2d 769, 773 (11th Cir. 1988) to support its argument. In *Hurt* and *Deviner,* the courts held that the district court did not err by refusing to admit evidence of foreign legal standards because evidence of such foreign requirements could lead to jury confusion. Neither case, however, held foreign legal

such evidence at trial, Plaintiff will request the Court to rule on the issue outside of the jury. Though, Plaintiff vehemently opposes Biomet's request to exclude foreign regulatory presentations and communications. In other words, Plaintiff is not seeking to introduce the actions of foreign regulatory agencies at this time, but rather the data, presentations, communications, etc. of foreign regulatory agencies. Biomet summarily argues this evidence should be excluded because it is irrelevant since Plaintiff's treatment was performed in the United States and even if relevant, the prejudice outweighs any probative value. However, Biomet offers no authority or support for this position. This evidence is relevant to prove design defect, causation, notice of a problem, as well as punitive damages, and it must be admissible.

**MOTION NO. 7.** **DEPUY ORTHOPEDIC DOCUMENTS, INCLUDING DEPUY DOCUMENTS IN JIM LANCASTER'S CUSTODIAL FILE**

Biomet next argues DePuy documents shall be excluded because they are unfairly prejudicial and would risk jury confusion. Biomet advances the same argument the Court has since rejected in denying Biomet's motion for summary judgment on Plaintiff's design defect claim. Your Honor's ruling distinguishing the instant case from *Glass v. Allis-Chalmers Corp.*, 789 F.2d 612, 614 (8th Cir. 1986) says it best:

> Plaintiffs' criticism of metal-on-metal hip implants is criticism of a particular design choice. That alone distinguishes the present case from *Glass*. Whether the use of metal-on-metal articulation in hip implants is always unreasonably dangerous is a disputed question of fact. (As noted above, Truman will opine that it is.) But Plaintiffs are not precluded from asserting that the M2a Magnum is defective merely because it may share a design defect with other metal-on-metal devices. To hold otherwise would lead to an absurd result: Missouri product designers could insulate themselves from liability

---

standards were inadmissible as a matter of law, merely that declining to admit such evidence did not constitute an abuse of discretion. Neither case addressed whether the evidence was admissible on an issue such as feasibility. Moreover, in *Deviner,* the court expressly based its decision on the potential for jury confusion concerning the appropriate legal standard. *Id.* at 773.

>   simply by repeating the design defects of their competitors. *Glass* does not require this result, and the Court declines to so hold.

Rec. Doc. 225, at 23. Moreover, Mr. Lancaster was a senior executive at Biomet who had experience with and knowledge about the design choice of metal-on-metal hips (and its resulting consequences). The knowledge and information he brought with him to Biomet is certainly relevant to the design defect claims here. Finally, this is the same argument Biomet offers with respect to complaints, lawsuits, and claims of other products and it should be rejected for the same reasons as discussed in Response to Motion No. 1.

### MOTION NO. 8. TESTIMONY FROM DR. KANTOR THAT DR. LEWALLEN'S PURPORTED RELATIONSHIP WITH BIOMET AFFECTED DR. LEWALLEN'S EVALUATION OF MRS. BAYES

Albeit offering no support, Biomet seeks to exclude testimony from Dr. Kantor regarding Dr. Lewallen's relationship with Biomet. As was done at his deposition, Plaintiff anticipates Biomet will question Dr. Kantor about the medical record from Plaintiff's sole visit with Dr. Lewallen. If Biomet explores this testimony with Dr. Kantor, there is no reason Dr. Kantor should be precluded from offering reasons to support his critique of the record (and the doctor who made it). This testimony goes to the witnesses' credibility – both Dr. Kantor and Dr. Lewallen – and is admissible.

### MOTION NO. 9. PRE-TRIAL DISCOVERY DISPUTES, CONFIDENTIALITY DESIGNATIONS, AND ATTORNEY-CLIENT PRIVILEGE DESIGNATIONS

Plaintiff agrees at this time that no party should be permitted to raise issues about discovery disputes, document retention practices, litigation holds and the parties' discovery conduct. However, to the extent that Biomet is seeking to prevent testimony about confidentiality or attorney-client privilege designations, Plaintiff respectfully disagrees with Biomet—this evidence is highly relevant and not prejudicial. Plaintiff is permitted to elicit testimony about a document's

confidential designation or that an exhibit is an internal document for which the public does not have access to. For example, some of these confidential documents are just the type of evidence that a jury may conclude would have prevented implanting surgeon Dr. Martin from ever even utilizing the M2a-Magnum with Mrs. Bayes. Moreover, where words or lines are redacted on an exhibit because it is attorney-client privileged information, Plaintiff must be permitted to explain this to the jury. Plaintiff is not attempting to introduce evidence or testimony about the substance of this information, but simply provide context about the accessibility and an explanation as to why some words are censored. Preventing this type of testimony would suggest the documents were readily available to doctors and patients such as Mrs. Bayes, which is erroneous. Biomet contends this testimony would confuse and mislead the jury into "believing the designations have some bearing on Plaintiffs' claims." Yet not explaining the redactions would lead to a more absurd result and cause jury confusion and curiosity. Biomet's argument is without merit and this evidence should not be excluded

### MOTION NO. 10. ZIMMER'S MERGER WITH BIOMET AND RELATED PAYMENTS

Plaintiff agrees that no party should be allowed to make any mention of the price or payments related to the merger. However, testimony and/or evidence that there was a merger is necessary to provide a contextual explanation as some employees testify that they are Zimmer Biomet employees. *See* Exhibit 5, Excerpt of Schroeder 2016 Deposition, 15:13-17. If an explanation is not provided, the jury may be misled into thinking they are not the Defendant's employees; such information certainly goes to the weight that jurors could give to a particular witness's testimony. Moreover, in conjunction with the merger, Zimmer conducted an audit of Biomet which included review of Biomet's deficient adverse event tracking mechanisms, which

is directly relevant to the instant case. Thus, testimony about the merger itself and the audit conducted therein is relevant and such evidence is admissible.

**MOTION NO. 11.**     **COMPENSATION PAID TO BIOMET'S EXPERTS IN OTHER CASES**

Biomet asks this Court to exclude evidence of compensation of their experts in other cases. Compensation of Biomet's experts is clearly allowed in order to show bias and goes to the credibility of the witness. Pecuniary interest and bias of a witness is always admissible, and is only limited by the discretion of the Court. *See Koelling v. Mercy Hosps. E. Communities,* 558 S.W.3d 543, 552 (Mo. Ct. App. 2018)*; Brantle, v. Sears Roebuck 8, Co.,* 959 S.W.2d 927 (Mo. App. E.D. 1998). The amount of compensation that Biomet pays its expert witnesses is highly relevant to the bias of Biomet's witnesses and should not be excluded.

Dated: September 8, 2020            Respectfully submitted,

                                                    **BACHUS & SCHANKER, LLC**
                                                    */s/ Darin L. Schanker*

                                                    Darin L. Schanker, Esq.
                                                    J. Christopher Elliott, Esq.
                                                    Melanie R. Sulkin, Esq.
                                                    Bachus & Schanker, LLC
                                                    101 West Colfax Suite 650
                                                    Denver, CO 80202
                                                    (303) 893-9800 (phone)
                                                    (303) 893-9900 (fax)
                                                    dschanker@coloradolaw.net
                                                    celliott@coloradolaw.net
                                                    melanie.sulkin@coloradolaw.net

                                                    *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 8, 2020, a copy of the above and foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

                                    */s/ Allison Brown*
                                    Allison Brown, paralegal