**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARY BAYES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:13-cv-00800-SRC |
| ) | |
| BIOMET, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **Memorandum and Order**

Biomet maintains that the verdicts returned require its victory. Biomet contends that the jury's verdict in its favor on the strict-liability claim compelled a verdict in its favor on the negligent-design claim. Biomet brings the present motion to correct the supposedly inconsistent verdicts, asking the Court to alter the judgment on the negligent-design claim in its favor. Plaintiffs oppose the motion both on procedural and substantive grounds. The Court addresses the motion below.

**I.    Background**

The jury trial in this action commenced on October 5, 2020. Doc. 296. Plaintiffs presented claims of strict liability product defect and negligent design to the jury. After both parties had rested their cases, the Court gave the jury the following instructions concerning Plaintiffs' claims of strict liability product defect and negligent design:

INSTRUCTION NO. 10.

      On Plaintiffs' claim for strict liability-product defect, your verdict must be for Mrs. Bayes if you believe:

      1.      Biomet sold the M2a Magnum in the course of its business, and

    2.    the M2a Magnum was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

    3.    the M2a Magnum was used in a manner reasonably anticipated, and

    4.    Such defective condition, as existed when the M2a Magnum was sold, directly caused or directly contributed to cause damage to Mrs. Bayes.

INSTRUCTION NO. 11.

On Plaintiffs' claim for negligence, your verdict must be for Mrs. Bayes if you believe:

    1.    Biomet designed the M2a Magnum, and

    2.    the M2a Magnum was in a defective condition unreasonably dangerous, and

    3.    Biomet failed to use ordinary care to design the M2a Magnum to be reasonably safe, and

    4.    such failure directly caused or directly contributed to cause Mrs. Bayes to sustain damage.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances.

Doc. 362 at pp. 11, 12; Doc. 357 at 97:3–98:4. Based on these instructions, the jury returned the following answers on the verdict form:

On the claim of Plaintiff Mary Bayes based on strict liability – product defect, against Biomet, as submitted in Instruction Number 10, we, the undersigned jurors, find in favor of:

Biomet

On the claim of Plaintiff Mary Bayes based on negligent design against Biomet, as submitted in Instruction Number 11, we, the undersigned jurors, find in favor of:

[Plaintiff] Mary Bayes

Doc. 363.  After the jury returned its verdict, Biomet orally moved for a mistrial based on an inconsistent verdict.  Doc. 371 at 46:7–25.  The Court took the motion under advisement, Doc. 371 at 47:3–4, and ordered the parties to brief the oral motion.  *Id.* at 47:17–49:12.  After the parties briefed the motion, the Court recessed the trial.  *Id*. at 49:16–18.  While on the record after the Court recessed the trial, Biomet moved for entry of judgment, or in the alternative for a new trial or mistrial.  *Id*. at 50:1–51:12.  The Court then ordered the parties to brief Biomet's "motion for mistrial and related objections made on the record."  Doc. 366.

After briefing was complete, *see* Docs. 379, 392, 395, the Court issued an oral ruling denying the motion.  Doc. 416 at 5:24–14:16.  The Court held that Biomet was not entitled to judgment on the verdict and found no basis for a mistrial.  *Id*.  Following the trial, Biomet filed a motion to alter the judgment under Federal Rule of Civil Procedure 59(e), Doc. 436, "ask[ing] the Court to revisit [its prior] ruling and to alter the judgment to accurately reflect the jury's findings."  Doc. 437 at p. 6.  Plaintiffs oppose the motion, arguing that it is procedurally improper and fails for the same reasons as the Court previously found.  Doc. 450.

## II.      Rule 59(e) Standard

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  While the text of the applicable rule provides little guidance, the Eighth Circuit has set the parameters of Rule 59(e).  "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)[.]"  *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).  "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence."  *Id*. (citation and internal quotations omitted). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise

3

arguments which could have been offered or raised prior to entry of judgment." *Id.* "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)); *see also Clemens v. Local One, Serv. Emps. Int'l Union*, 17-2381, 2019 WL 5579584, at *1 n.1 (E.D. Mo. Oct. 29, 2019), *aff'd*, 817 Fed. App'x 297 (8th Cir. 2020) ("A Rule 59(e) motion is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." (citation and internal quotations omitted)).

### III.   Discussion

#### A.   Procedurally improper

Plaintiffs argue that Biomet's motion is procedurally improper because it rehashes arguments the Court has already considered and ruled upon, and thus seeks nothing more than another bite at the apple. Doc. 450 at p. 3. In response, Biomet admits "that it has already raised the issues here through its original motion seeking entry of judgment in its favor based on the verdict." Doc. 455 at p. 1 (citing Docs. 379, 395). It contends however that the Federal Rules of Civil Procedure "require parties to renew certain motions in posttrial motions to preserve those arguments for appeal, including motions for judgment as a matter of law." Doc. 455 at pp. 1–2.

Biomet correctly notes that "[p]arties who appeal contending they were entitled to judgment as a matter of law must preserve the issue by making a Rule 50(a) motion for judgment as a matter of law after the close of the evidence . . . and a Rule 50(b) renewed motion for judgment as a matter of law after the verdict." *Hoffmeyer v. Porter*, 758 F.3d 1065, 1068 (8th Cir. 2014) (citations omitted); *see also* Doc. 455 at pp. 1–2. But *Hoffmeyer*, as well as the other

4

cases Biomet cites, address 50(b) motions that must be renewed, not motions brought pursuant to 59(e). In short, Biomet admits that its motion asserts the same issues that the Court has already considered. Rule 59(e) does not provide this avenue and thus this motion is procedurally improper. The Court therefore denies Biomet's Motion to Alter the Judgment on that basis.

### B. Inconsistent verdicts

Moreover, Biomet's motion fails on the merits as well. Parties may challenge inconsistent jury verdicts through a Rule 59(e) motion to alter or amend the judgment. *See Top of Iowa Co-op. v. Schewe*, 324 F.3d 627, 632 (8th Cir. 2003); *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 761 (8th Cir. 2008). Here, Biomet argues that by rejecting Plaintiffs' strict-liability product-defect claim, the jury must have found that an element also required to prove the negligent-design claim was not met. Accordingly, the jury's strict-liability verdict "unavoidably takes down Plaintiffs' negligent-design claim[.]" Doc. 437 at pp. 7–8. The Court finds that this argument fails for a variety of reasons.

The Court first addresses Biomet's contention that its motion "does not claim that the verdicts were inconsistent and does not dispute the propriety of the Court's jury instructions; it agues instead that [it] is entitled to judgment based on the jury's verdict." Doc. 437 at p. 17 n.6. Biomet claims that because the jury returned a verdict in its favor on the strict-liability claim, that entitled it to a verdict in its favor on the negligent-design claim, and thus the jury's verdict in Plaintiffs' favor on the negligent-design claim was in error. Simply stated, Biomet claims that the jury's verdicts cannot be reconciled with one another. Accordingly, despite this attempt at obfuscation, Biomet argues that the verdicts are inconsistent. *See Klingenberg v. Vulcan Ladder USA, LLC,* 936 F.3d 824, 833 (8th Cir. 2019).

As a threshold matter, the Court must consider whether the jury reached inconsistent verdicts. Courts "evaluate whether verdicts are consistent in light of how the jury was instructed[.]" *U.S. S.E.C. v. Quan*, 817 F.3d 583, 590 (8th Cir. 2016). Here, Biomet's core argument remains that because the jury found in favor of Biomet on strict liability, it must have also found in its favor on the negligent-design claim. But the instructions given—which Biomet agreed on and lodged no objection to—permitted the jury to reach verdicts that were not dependent on each other and, as Biomet itself recognizes, had differing elements. Doc. 455 at p. 3. Moreover, the verdict form submitted by Biomet throughout this case, Doc. 208-1 at p. 44–45, Doc. 237-1 at pp. 33–34, Doc. 248-1 at pp. 8–9, Doc. 340-1 at pp. 16–17, the verdict form submitted by Plaintiffs throughout this case, Doc. 239 at pp. 35–36, Doc. 341-1 at pp. 8–9, the verdict form submitted jointly, Doc. 352-1 at pp. 28–29, and the final verdict form provided to the jury (that mirrored the form provided by Biomet) each permitted the jury to find Biomet liable for negligent design even if it did not find Biomet strictly liable. Specifically, the verdict forms require the jury to render a verdict on each of the two claims, and then state "Note: Complete the following paragraph ***only if one or more of the above findings*** is in favor of Plaintiff Mary Bayes." *Id*. (emphasis added). The "one or more" language thus instructed the jury that it could award Mrs. Bayes damages if it found for her on either claim. *Id*. Thus, Biomet's motion fails because it did not object to the jury instructions before the jury reached its verdicts on the negligent-design and strict-liability claims.

Presumably recognizing that it should have objected to the jury instructions and verdict form before the Court instructed the jury, Biomet contends that it only realized that certain issues were undisputed after closing arguments, which were made after instructions had been given. Doc. 455 at pp. 3–4. But this argument raises the question—why did Biomet not object during

or immediately after closing arguments, and then move for re-instruction of the jury to conform to what it viewed as newly-undisputed issues. Regardless of the reason, Biomet only objected that the verdicts were inconsistent after the verdicts were returned. Doc. 371 at 46:7–25. Biomet cannot agree to jury instructions and a verdict form, receive an unfavorable verdict, and then argue that the instructions and verdict form produced an inconsistent verdict when the instructions and verdict form it agreed upon permitted the precise verdict reached. *Quan*, 817 F.3d at 590 ("[Appellant] asked the district court to state the law a certain way, and he cannot now successfully complain that the district court agreed and the jury listened." (citations omitted)). As Plaintiffs note, Doc. 450 at p. 2, Biomet could have offered and argued for instructions or a verdict form stating that if the jury finds in favor of Biomet on the strict-liability claim, it must also find in favor of Biomet on the negligent-design claim. But Biomet never offered any such instructions or verdict form, and the instructions and verdict form tendered by Biomet and given by the Court permitted the verdicts reached.

Additionally, the verdicts reached by the jury align with Missouri law. As the Court explained in its previous order, the Missouri Supreme Court stated that juries considering strict-liability and negligent-design claims do not have to reach verdicts in favor of the same party. Doc. 416 at p. 7:3–25. "[A]bsent controlling [state] Supreme Court authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) (citations omitted); *see* Doc. 416 at 7:16-22. The Missouri Supreme Court in *Johnson v. Auto Handling Corp.* reaffirmed its holding in *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011), "that negligence and strict liability theories of product liability are separate and distinct theories. Finding against the plaintiff on a strict liability product defect theory does not require rejection

7

of plaintiff's claims of negligent design, manufacturing, or failure to warn." 523 S.W.3d 452, 466 (Mo. 2017), *as modified* (Aug. 22, 2017). Thus, *Johnson* provides a definitive indication that the Missouri Supreme Court would rule that the verdict in favor of Biomet on the strict-liability claim did not also require a verdict in Biomet's favor on the negligent-design claim.

With *Johnson* establishing that verdicts on strict-liability and negligent-design claims may go in opposite directions, Biomet focuses on the specific elements that the jury would have considered. Biomet's argument would require the Court to determine the jury's basis for its verdicts, and it is not entirely clear whether the Court may engage in such an analysis. *See Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 878 (8th Cir. 2012). The Eight Circuit has repeatedly found that when a general verdict is issued, the Court may not speculate why the jury reached a specific verdict. *Coterel v. Dorel Juv. Grp., Inc.*, 827 F.3d 804, 808 (8th Cir. 2016); *Lopez*, 690 F.3d at 878; *Regions Bank v. BMW N. Am., Inc.,* 406 F.3d 978, 980 (8th Cir. 2005). However, as Biomet notes, those cases dealt with a single verdict, and thus "could not have considered comparing the elements underlying two separate verdicts, the issue presented here." Doc. 455 at pp. 4–5. Thus, while the Court expresses skepticism that it may even consider Biomet's arguments regarding the specific elements that the jury relied upon in reaching its verdicts, the Court will address them given that the Eight Circuit does not clearly forbid it.

Upon consideration of the two verdicts, the Court finds that they can be easily harmonized. *Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339, 1347 (8th Cir. 1996). ("[I]t is the court's duty to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent."). In its motion, Biomet repeats the same assumption that the Court already rejected—that the only elements that the jury could have found in Biomet's favor on strict liability were defective design and causation. Doc. 416 at p. 10:1–16.

8

Biomet recognizes two elements unique to only the strict-liability claim—"Biomet sold the M2a-Magnum in the course of its business" and "the M2a-Magnum was used in a manner reasonably anticipated[.]" Doc. 437 at p. 13; Doc. 455 at pp. 7–8. Despite these differing elements, Biomet argues that because these elements were undisputed, the jury could not have relied upon these differing elements in reaching its verdict. Doc. 437 at pp. 9–10, 13.

But this argument rests on the faulty premise that the element of "used in a manner reasonably anticipated," Doc. 362 at p. 11, was undisputed. While the parties stipulated that Biomet sold the M2a Magnum in the course of its business, *see* Doc. 199 at ¶¶ 7–8, Doc. 313 at 20:3–7, the parties did not stipulate that the M2a Magnum was used in a manner reasonably anticipated. *Id*. To the contrary, Biomet introduced evidence putting this element at issue, including repeatedly asking whether Mrs. Bayes followed the precautions provided by her physicians following her hip surgeries and the consequences that could result from failing to abide by the precautions. *See e.g.*, Doc. 316 at 242:10–244:3, Doc. 325 at 185:16–19, Doc. 334 at 196:25–199:11. At no time was the jury instructed that this specific element was undisputed and that the product was in fact "used in a manner reasonably anticipated[.]" *Id*. And, as noted above, Biomet admitted that it did not realize that this element was undisputed until after closing arguments, Doc. 455 at pp. 3–4, and first argued that it was undisputed only after the jury returned its verdicts. Doc. 379. Biomet cannot have its cake and eat it too—it took the risk of letting the element go to the jury as disputed and it cannot *ex-post* argue the element was undisputed, particularly when it could have moved for the Court to re-instruct the jury, before the jury retired to deliberate.

Biomet also argues that the verdicts cannot be reconciled because although there are differing elements between the jury instructions for the strict-liability and negligent-design

9

claims, the differing elements could not have possibly been relied upon by the jury in reaching its decision.  Specifically, Biomet recognizes that the jury instructions on the strict-liability claim required the jury to find that the M2a Magnum "was used in a manner reasonably anticipated[.]" Doc. 437 at pp. 8, 9.  But Biomet argues that "no reasonable juror could have concluded" that the M2a Magnum was not "used in a manner reasonably anticipated[.]"  Doc. 437 at p. 10. Accordingly, because the differing element could not have been relied upon by the jury, it must have found that Plaintiffs did not establish one of the remaining elements, each of which were also necessary to find Biomet liable for negligent design.  *Id*. at pp. 13–14.  The Court finds Biomet's argument unpersuasive.

First, in making its argument that every reasonable juror would have concluded that the M2a Magnum was "used in a manner reasonably anticipated," *id*. at p. 10, Biomet effectively asks the Court to find that it is entitled to judgment as a matter of law as to that element.  But, as explained in more detail in its ruling on Biomet's Renewed Motion for Judgment as a Matter of Law, Doc. 462, Biomet's failure to seek judgment in its favor on this element before the jury returned its verdict prevents it from raising it after the verdict.  Thus, even assuming that Biomet's argument is correct, the Court cannot consider it because Biomet waived it.

Moreover, while it is questionable whether the Court may consider the elements that the jury relied upon when reaching two separate verdicts, the Court surely cannot turn its gaze on a disputed element present in the jury instructions in only one of the claims and speculate how the jury would have ruled.  *Coterel*, 827 F.3d at 808; *Lopez*, 690 F.3d at 878; *Regions Bank,* 406 F.3d at 980.  Accordingly, the Court cannot definitely find that "no juror could have concluded" that the M2a Magnum was not "used in a manner reasonably anticipated[.]"

But even if the element of "used in a manner reasonably anticipated" was, in fact, undisputed, still another differing element exists between the claims. The language "when put to a reasonably anticipated use" appears only in the second element of the strict-liability claim, and thus is another differing element between the two claims. Biomet's singular focus on "used in a manner reasonably anticipated" as the disputed differing element fails to account for the differences between a strict-liability design-defect claim and a negligent-design claim. And the "when put to a reasonably anticipated use" language reflects the differences.

Since the 1970s, Missouri has recognized a distinction between these two claims. "In negligence cases[,] the duty owed is based on the foreseeable or reasonable anticipation that harm or injury is a likely result of acts or omissions. . . . On the other hand, strict liability in tort is based in part on the foreseeable or reasonably anticipated use of the product . . . rather than on the reasonably anticipated harm the product may cause." *Blevins v. Cushman Motors,* 551 S.W.2d 602, 607–08 (Mo. banc 1977) (internal citations and quotation marks omitted). In other words, strict liability centers on the condition (dangerousness) of an article designed in a particular way, while negligence centers on the reasonableness of the manufacturer's action in designing and selling the article as it did. *Duke v. Gulf & W. Mfg. Co.,* 660 S.W.2d 404, 411 (Mo. App. 1983).

Simply put, strict liability focuses on the product, not on the conduct of the manufacturer or seller. *Racer v. Utterman,* 629 S.W.2d 387, 395 (Mo. App. 1981). Thus, the main inquiry in a strict-liability case "is whether the product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use." *Nesselrode v. Exec. Beechcraft, Inc.,* 707 S.W.2d 371, 375 (Mo. banc 1986). In *Johnson*, the Supreme Court of Missouri reaffirmed this distinction. 523 S.W.3d at 466. *Johnson* explained that proving

11

negligent design "focuses on what the manufacturer knew rather than on the product," before then explicitly stating that "[f]inding against the plaintiff on a strict liability product defect theory does not require rejection of plaintiff's claim of negligent design . . . ." *Id.*

With this background in mind, the Court finds that the verdicts can be reconciled. Biomet argues that the second element of the jury instructions for the strict-liability claim, "the M2a-Magnum was then in a defective condition[,] unreasonably dangerous[,] when put to a reasonably anticipated use," Doc. 362 at p. 11, mirrors the second element of the jury instructions on the negligent-design claim, "M2a-Magnum was in a defective condition[,] unreasonably dangerous," Doc. 362 at p. 12. Yet, when one places the language of the elements side by side, the difference becomes readily apparent. Moreover, the broader context of the two different claims demonstrates that their differing elements are not merely semantic but carry substantive distinctions. Importantly, the phrase "when put to a reasonably anticipated use" modifies "defective condition[,] unreasonably dangerous" and focuses on the proper inquiry in strict-liability cases—whether, the product, as designed, created an unreasonable risk of danger to the consumer when put to normal use. *Nesselrode*, 707 S.W.2d at 375; *Johnson*, 523 S.W.3d at 466. Thus, it's both possible and rational that in deciding the strict-liability claim, the jury focused on whether, when considering how the M2a Magnum was anticipated to be used, it was not unreasonably dangerous.

However, the phrase "when put to a reasonably anticipated use" does not appear in the second element of the instruction on the negligent-design claim and thus the jury could rationally have focused on whether Biomet's conduct made the M2a Magnum unreasonably dangerous. Specifically, the jury could have determined that Biomet's decision to design a metal-on-metal hip implant rather than a metal-on-poly hip implant in and of itself made the product

12

unreasonably dangerous, as Plaintiffs repeatedly argued based on the evidence to that effect. Doc. 357 at 44:8–46:8.  In other words, the jury could have found that the reasonably anticipated harm that the product may cause, especially when compared to metal-on-poly hip implants, made the product unreasonably dangerous.  The jury then could have found that Biomet failed to use ordinary care to design the M2a Magnum to be reasonably safe because of its failure to properly test the M2a Magnum and its progeny.

Moreover, because "when put to a reasonably anticipated use" modifies "defective condition[,] unreasonably dangerous[,]" the second element of the strict-liability claim cannot be parsed in the manner Biomet suggests.  The second element of the instruction requires the jury to consider whether a product is i) "in a defective condition[,]" ii) "unreasonably dangerous[,]" iii) "when put to a reasonably anticipated use."  Biomet claims that because the "used in a manner reasonably anticipated" in the *third* element is undisputed, the jury must deem as established— and therefore not consider—the "when put to a reasonably anticipated use" component of the *second* element.  Doc. 437 at p. 13, 16.  But the instruction does not admit of such a reading; the language of the second element of the instruction requires a jury to consider exactly what it says: whether a product is i) "in a defective condition[,]" ii) "unreasonably dangerous[,]" iii) "when put to a reasonably anticipated use."  In other words, the jury must consider *all* three components in determining whether Plaintiffs met the second element of their strict-liability claim.  Thus, contrary to Biomet's argument, the instruction did not permit the jury to consider only some, but not all, of the components in reaching its verdict.

Accordingly, even assuming the jury reached potentially inconsistent verdicts, the Court reiterates that its duty at this stage is to harmonize the verdicts—not to explain whether the jury reached the correct verdict based on the facts.  *Anheuser-Busch*, 89 F.3d at 1347.  The Court

13

finds that the verdicts can be harmonized and therefore denies Biomet's [436] Motion to Alter the Judgment.

So Ordered this 2nd day of August 2021.

*SLR.CR*

**STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE**