# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| MARY BAYES, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:13-cv-00800-SRC |
| BIOMET, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## Memorandum and Order

Facing a jury verdict of $21 million, Biomet forwards a bevy of arguments in its attempt to persuade the Court to enter judgment in its favor. Such an approach does not surprise the Court given the high burden Biomet must meet for this Court to overturn the decision reached by the jury. However, try as it might, Biomet has failed to establish that judgment should be entered in its favor.

**I.    Background**

The Court provided the relevant background in its ruling on Biomet's Motion to Alter the Judgment, Doc. 461 and therefore will not restate it in full here. Biomet previously moved for judgment as a matter of law before the close of evidence, Doc. 349, which the Court denied. Doc. 357 at 44:12–46:8. Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Biomet renews its Motion for Judgment as a Matter of Law on Plaintiffs' negligent-design claim and on the loss-of-consortium claim that derives from the negligent-design claim. Doc. 438.

**II.   Standard**

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law. It provides, in part:

>   (a) Judgment as a Matter of Law.
>
>       (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>           (A) resolve the issue against the party; and
>
>           (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
>       (2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
>
>   (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
>       (1) allow judgment on the verdict, if the jury returned a verdict;
>
>       (2) order a new trial; or
>
>       (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a)-(b). "Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law.  A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) (citing *Graham Const. Servs. v. Hammer & Steel Inc.,* 755 F.3d 611, 617–18 (8th Cir. 2014)).

"[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Allstate Indem. Co. v. Dixon*, 932 F.3d 696, 702 (8th Cir. 2019), *reh'g denied* (Sept. 12, 2019) (quoting *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994)) (internal quotation marks omitted). Thus, when considering a motion for judgment as a matter of law, the Court must:

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*Bavlsik*, 870 F.3d at 805 (quoting *Ryther v. KARE 11*, 108 F.3d 832, 844 (8th Cir. 1997) (en banc)). Against this high bar, the Court considers Biomet's motion.

**III.    Discussion**

    **A.    Jury verdict**

Biomet's first argument rehashes the argument raised in its Motion to Alter the Judgment, Doc. 436, contending that the jury verdict for Biomet on the strict-liability design-defect claim unavoidably means that Plaintiffs failed to produce sufficient evidence necessary to satisfy at least one of the elements of the negligent-design claim. For the reasons stated in its ruling on Biomet's Motion to Alter the Judgment, *see* Doc. 461, the Court finds that Biomet is not entitled to judgment as a matter of law. Moreover, Biomet's argument also fails because it did not move for judgment as a matter of law on the specific element of "used in a manner reasonably

3

anticipated," *see* Doc. 362 at p. 11, in its Rule 50(a) motion.  As stated above, Rule 50(b) motions are limited only to those matters that were raised in the pre-verdict Rule 50(a) motion.  *Nassar*, 779 F.3d at 551 (citing *Graham Const. Servs.,* 755 F.3d at 617–18).  Thus, because Biomet did not move for judgment as matter of law on the element of "used in a manner reasonably anticipated," Doc. 362 at p. 11, until after the jury returned its verdict, and not in its Rule 50(a) motion, the Court cannot consider this argument in this Rule 50(b) motion.

This case is also distinguishable from *Ridgell v. City of Pine Bluff*, 935 F.3d 633 (8th Cir. 2019), on which Biomet relies.  Doc. 439 at p. 9 n.2.  There, a former city employee sued the mayor and the city for discrimination.  *Ridgell,* 935 F.3d at 635.  At the close of evidence, both the mayor and city moved for judgment as a matter of law on the discrimination claims, which the court denied.  *Id*.  The jury returned a verdict in favor of the employee, but against the city.  *Id*.  The city then filed a renewed motion for judgment as a matter of law, or in the alternative, to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 50(b) and 59.  *Id*.  The city argued that once the jury found for the mayor, it necessarily followed that it could not be liable.  *Id*.

The plaintiff argued that the city waived this argument by failing to raise it in its motion for judgment as a matter of law at the close of evidence.  *Id*.  The court found that the city did not waive the specific argument by not raising it in a pre-submission motion.  *Id*.  It explained that the pre-submission motions focused on whether the plaintiff presented sufficient evidence against the mayor and city on the discrimination claims.  *Id*.  However, the city's argument that a verdict in favor of the mayor required a judgment in its favor only became ripe after the jury reached its verdict in favor of the mayor.  *Id*.  Accordingly, the court found that the city timely raised the argument.  *Id*.

But the argument raised by Biomet does not mirror the one raised by the city in *Ridgell*. Biomet does not merely argue that the jury's verdict on the strict-liability claim entitles it to judgment in its favor on the negligent-design claim. Rather it argues that because it is entitled to judgment as a matter of law on the element of "used in a manner reasonably anticipated," Doc. 362 at p. 11, that necessarily means the jury's verdict in its favor on the strict-liability claim entitles it to judgment on the negligent-design claim. Biomet thus makes a two-part request— first asking the Court to find that it is entitled to judgment as a matter of law on the specific element of "used in a manner reasonably anticipated," *id*., and then after making such a finding, to find that the jury's verdict in Biomet's favor on the strict-liability claim necessitates judgment in its favor on the negligent-design claim. However, Biomet's argument that it is entitled to judgment as a matter of law on the element of "used in a manner reasonably anticipated," *id*., became ripe before the jury retired to deliberate, not after the jury rendered its verdict in favor of Biomet on the strict-liability claim. *Nassar*, 779 F.3d at 551, 552; Doc. 349 (Biomet's Rule 50(a) motion failing to seek judgment on the element of "used in a manner reasonably anticipated"); Doc. 461.  Stated differently, before jury deliberations began, Biomet could have known that it had a basis to move for judgment as a matter of law on the element of "used in a manner reasonably anticipated, Doc. 362 at p. 11, based on the evidence presented at trial. *Nassar*, 779 F.3d at 552.  By failing to raise this argument at that time, Biomet cannot raise it for the first-time in a renewed motion for judgment as a matter of law. *Nassar*, 779 F.3d at 551–552 (citing *Graham Const. Servs.,* 755 F.3d at 617–18).  Moreover, in contrast to *Ridgell* in which the court found that the verdicts could not be harmonized, the verdicts here can be harmonized. *See* Doc. 461.

### B. Sufficiency of the evidence on the negligent-design-defect claim

Biomet argues that Plaintiffs failed to offer sufficient evidence to create a jury question on several issues, including design defect, the standard of care, and causation. The Court addresses each in turn.

#### 1. Design defect

Biomet argues that Plaintiffs failed to provide sufficient evidence on the element of design defect because they only offered "generic evidence about the general failure of metal-on-metal implants." Doc. 439 at p. 11. The Court rejected this argument when Biomet raised it on summary judgment, Doc. 225, and rejects it again here.

Biomet once again relies on *Glass v. Allis-Chalmers Corp.*, 789 F.2d 612 (8th Cir. 1986). Doc. 439 at p. 11. However, as the Court earlier explained, that case is easily distinguishable because Plaintiffs' criticism of metal-on-metal hip implants is criticism of Biomet's particular design choice. Doc. 225 at p. 23. Moreover, holding that Plaintiffs are precluded from asserting that the M2a Magnum is defective because it shares a design defect with other metal-on-metal devices would lead to absurd results; Missouri product designers could insulate themselves from liability simply by repeating the design defects of their competitors. *Id*.

Biomet also cites *Richardson v. Holland*, 741 S.W.2d 751, 753–54 (Mo. App. 1987) for support. Doc. 456 at p. 5. There, the plaintiff sought to hold a manufacturer liable for producing the F.I.E. Derringer handgun, a gun known to be used for dangerous purposes. *Richardson*, 741 S.W.2d at 753. However, the plaintiff never alleged any defect in manufacturing or design that caused the Derringer to malfunction. *Id*. Rather, the plaintiff argued that the gun was defective because it belonged to a class of guns known as Saturday Night Specials—guns principally used for criminal activities. *Id*. The court rejected the plaintiff's argument, explaining that when a

6

product has inherent and obvious dangers that an average consumer would recognize, the product "is not defective merely because it was placed on the marketplace with such obvious[] dangerous propensities. . . . For the handgun to be defective, there would have be a problem in its manufacture or design . . . that would cause it to fire unexpectedly or otherwise malfunction." *Id*. at 754 (citations and internal quotations omitted). Thus, *Richardson* is easily distinguishable because Plaintiffs did allege that the M2a Magnum has a design defect, i.e. metal-on-metal vs. other design options, as opposed to arguing that Biomet is liable for producing a product that possesses dangerous inherent characteristics such as those of a gun.

The present case has similarities to *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748 (Mo. Ct. App. 2008). Like Biomet, the defendants in *Smith* relied on *Richardson* to argue that the plaintiffs failed to offer sufficient evidence demonstrating a defect because the plaintiffs did not offer anything regarding why the cigarette at issue was dangerous, instead merely arguing that cigarettes in general were dangerous and thus the cigarette at issue was dangerous. *Id*. at 794. The court rejected this argument, explaining that the plaintiffs' evidence went "beyond a categorical attack on the danger of cigarettes in general." *Id*. at 796. Instead, the plaintiffs "demonstrated specific design choices by [the defendant]," such as higher nicotine levels, different blends of tobacco, and some flavoring agents, "that had the potential to affect [the plaintiff's] health . . . ." *Id*. Like the plaintiffs in *Smith*, Plaintiffs offered considerable evidence of a specific design choice, metal-on-metal, from which the jury could infer a defect existed.

Moreover, evidence at trial consisted of more than generic criticism of the metal-on-metal hip implants. For example, Biomet's own expert acknowledged that he stated in a deposition that the M2a Magnum's choice of a larger head would generate more friction. Doc.

7

353 at 216:15–24. Accordingly, the Court finds that Plaintiffs presented sufficient evidence on the element of design defect.

### 2. Standard of care and breach

Biomet next argues that Plaintiffs' negligent-design claim fails because they did not offer expert testimony establishing the applicable standard of care for medical-device manufacturers. Doc. 439 at p. 15. Biomet also argues that Plaintiffs failed present sufficient evidence that Biomet breached the standard of care. *Id*. Biomet is mistaken.

"To prove a negligent design claim under Missouri law, a plaintiff must show that the defendant breached its duty of care in the design of a product and that this breach caused the injury." *Stanley v. Cottrell*, *Inc*., 784 F.3d 454, 463 (8th Cir. 2015) (citations omitted). In a negligence action, "the particular standard of care that society recognizes as applicable under a given set of facts is a question of law for the courts. Whether a defendant's conduct falls short of the standard of care is a question of fact for the jury." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. 1993). Here, the parties do not dispute the standard of care, which the jury was instructed on—"Biomet failed to use ordinary care to design the M2a Magnum to be reasonably safe[.] . . . The phrase 'ordinary care' as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances." Doc. 362 at p. 12; Doc. 357 at 97:3–98:4.

As the Missouri Supreme Court has explained, "[t]he duty of care is an objective standard determined by what an ordinary careful and prudent person would have done under the same or similar circumstances." *Pierce v. Platte–Clay Elec. Co-op., Inc.,* 769 S.W.2d 769, 772 (Mo. banc 1989). While "[e]vidence of industry standards is generally admissible as proof of whether or not a duty of care was breached, . . . they do not establish a legal standard of care." *Basta v.*

*Kansas City Power & Light Co.*, 456 S.W.3d 447, 453 (Mo. Ct. App. 2014) (citing *Pierce*, 769 S.W.2d at 772); *Eagleburger v. Emerson Elec. Co.,* 794 S.W.2d 210, 231 (Mo. App. S.D. 1990); *see also In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1024 (E.D. Mo. 2009), *adhered to on reconsideration*, No. 4:06 MD 1811 CDP, 2011 WL 5024548 (E.D. Mo. Oct. 21, 2011) (cited favorably by Biomet, Doc. 439 at p. 17, stating "neither party can rely on compliance or noncompliance with regulations as evidence for or against liability, because the regulations do not provide a standard of care"). Therefore, under Missouri law, industry standards for medical-device manufacturers have relevance to whether Biomet breached the standard of care but do not establish the applicable standard of care.

Cases involving negligent-design claims illustrate this principle. For example, in *Bavlsik*, 870 F.3d at 806–07, the record contained evidence demonstrating that General Motors conducted compliance testing and met certain required safety standards. However, this compliance was relevant to, but not determinative of, the exercise of ordinary care, and thus the jury could consider expert testimony regarding the failure to properly test and find that General Motors breached its duty by not conducting the proper testing. *Id*. The expert in *Bavlsik* emphasized the importance of testing in the design process and how the failure to test means failure to exercise reasonable care. *Id*.; *see also Zesch v. Abrasive Co. of Phila.*, 183 S.W.2d 140, 145 (1944) ("[W]here it is shown that the imperfection could be disclosed by a test, it would seem reasonable that the manufacturer in the exercise of ordinary care would be under a duty to make the test.").

Here, Plaintiffs similarly stressed that Biomet failed to exercise ordinary care due to its failure to test or account for certain deficiencies in the M2a Magnum or its progeny. Plaintiffs offered Mari Truman as an expert witness, who testified about the "Consensus Document," a

9

document that emerged from a workshop attended by a hundred people from the hip-implant industry, which laid out a roadmap to bring back a second generation of metal-on-metal implants, and how Biomet failed to follow the steps stated in the document. *See* Doc. 326 at 253:8–256:17; Doc. 330 at 27:9–120:13.

Other evidence presented at trial further supports finding that Biomet failed to exercise ordinary care: 1) Biomet knew about the risks of metal-on-metal devices from the first-generation devices, *see, e.g.,* Doc. 348 at 121:21–122:10; 2) Biomet did not track metal ion levels when testing the Taper, a predecessor of the M2a Magnum, *see e.g.*, *id*. at 124:15–20; 3) Biomet never tested the 38, the M2a Magnum's immediate predecessor, in humans before selling it, *id*. at 123:20–25; 4) Biomet never tested the M2a Magnum in humans before it began selling it, s*ee, e.g.,* Doc. 345 at 133:17–134:7; *see also* Doc. 322-1 at 120:1–120:10; 5) one of Biomet's experts testified that an important lesson learned from this experience is the importance of human testing, Doc. 315-3 at 258:24–259:7; Doc. 311 at 80:16–81:2; 6) Biomet only used machine testing for the M2a Magnum, *see, e.g.,* Doc. 322-1 at p. 120:1–120:10; 7) Biomet performed machine testing using an ASTM standard that specifically stated that such testing was not to be used for metal-on-metal bearing pairs but rather measuring the wear of devices with at least one polymeric component, *see, e.g.*, Doc. 348 at pp. 127:16–131:25; and 8) Biomet's in-vitro machine testing did not replicate real-life behavior, *see, e.g.,* Doc. 322-1 at 120:4–7. The Court finds that Plaintiffs offered sufficient evidence from which the jury could find that Biomet breached its duty in developing the M2a Magnum.

By focusing on the applicable standard of care for a medical-device manufacturer, Biomet seeks to shoehorn this case into a professional negligence case, such as a claim of medical malpractice*. See* Doc. 439 at pp. 13–15 (citing *Blevens v. Holcomb*, 469 F.3d 692, 694–

10

95 (8th Cir. 2006) (professional negligence case involving medical malpractice); *Pasta House Co. v. Williams*, 833 S.W.2d 460 (Mo. Ct. App. 1992) (professional negligence case involving engineering)).  But Missouri law recognizes a distinction between ordinary negligence and professional negligence, *see Annen v. Trump,* 913 S.W.2d 16, 19 (Mo. Ct. App. 1995), and offers different jury instructions on the two claims.  *Compare* Mo. Approved Jury Instr. (Civ.) 11.05 *with* 11.06.  Here, Biomet submitted instructions that articulated the ordinary standard of care under Mo. Approved Jury Instr. (Civ.) 11.05, Doc. 208-1 at p. 20, Doc. 237-1 at p. 16, Doc. 340-1 at p. 10, the parties agreed to use that definition of ordinary care, Doc. 352-1 at p. 7, *see also id*. at pp. 16–17, and the instructions given by the Court contained that standard.  Doc. 362 at p. 12.

Finally, the Court finds Biomet's reliance on *Farkas v. Addition Mfg. Techs., LLC,* No. 4:17-CV-761 RLW, 2018 WL 6434776 (E.D. Mo. Dec. 7, 2018), *aff'd*, 952 F.3d 944 (8th Cir. 2020) misplaced.  While the court found that the plaintiff did not establish a product defect because he failed to provide industry standards demonstrating that his proffered safety measures were the only protections that would have made the machine at issue safe, the court also found that the plaintiff's own expert "admitted that a machine with a foot pedal and a properly-working point of entry guard is not inherently dangerous." *Id*. at 8.  Thus, consistent with Missouri case law regarding the relevance of industry standards in negligence cases, the court considered whether the product as designed complied with industry standards in addition to other relevant evidence.

For the reasons explained above, the Court denies Biomet's Renewed Motion for Judgment as a Matter of Law as to the element of breach of the duty of care.

11

3.  **Causation**

Biomet next argues that Plaintiffs failed to offer sufficient evidence to prove causation. First, Biomet contends that Plaintiffs offered unreliable expert testimony on causation. Doc. 439 at p. 18. Second, it argues that Plaintiffs' experts failed to establish that a design defect in the M2a Magnum caused Mrs. Bayes's injuries. *Id*. at p. 21. Neither argument holds weight.

i.  **Reliability of Plaintiffs' expert testimony**

Biomet argues that Plaintiffs failed to offer sufficient evidence of causation because their medical experts failed to account for or rule out obvious alternative explanations for Mrs. Bayes's injuries. *Id*. at 18. Biomet contends that Dr. George Kantor's and Dr. Paul Lux's testimony did not account for how the malpositioning observed by every treating physician impacted the performance of Mrs. Bayes's left hip-implant. *Id*. at 18–19. According to Biomet, the experts' failure to do so renders their testimony flawed, unreliable, and insufficient as a matter of law to establish specific medical causation. *Id*. at 18.

Biomet essentially regurgitates its *Daubert* motions to argue that Plaintiffs failed to present sufficient evidence of causation. However, the Court already determined that Dr. Kantor's and Dr. Lux's opinions adequately accounted for obvious alternative explanations in denying Biomet's *Daubert* motions. Doc. 225 at pp. 11–18. Although the Court determined that Dr. Kantor's and Dr. Lux's opinions were admissible, Biomet argues that these previously admissible expert opinions were rendered unreliable based on the testimony given at trial. However, as the Court noted in its ruling on Biomet's *Daubert* motions, these arguments go to the weight, not admissibility, of these expert opinions. *See id*. at 16.

Moreover, the cases Biomet relies upon do not support that testimony at trial renders previously admissible testimony subsequently unreliable. Both *Redd v. DePuy Orthopaedics, Inc.*, 700 F. App'x 551 (8th Cir. 2017) and *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748 (8th

12

Cir. 2006) involved *Daubert* motions that sought to exclude expert testimony because the expert's failure to account for alternative explanations rendered it unreliable and thus inadmissible. Neither case addresses the circumstances of this case. In fact, *Redd* supports the existence of a distinction between the *Daubert* stage and testimony at trial, stating "[a]lthough Missouri law would govern any merits determination of causation, it does not impact the district court's preliminary analysis under Rule 702 of the reliability of an expert's testimony." 700 F. App'x at 555 (citing *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 561 (8th Cir. 2014)). Thus, the question about the expert testimony given at trial is not whether it sufficiently accounted for alternative explanations, but rather whether the testimony offered sufficient evidence from which the jury could conclude that Biomet's negligent design "directly caused" Mrs. Bayes's injuries. *See Poage v. Crane Co.*, 523 S.W.3d 496, 508 (Mo. Ct. App. 2017) (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993)).

        ii.        **Plaintiffs' causation evidence**

Biomet argues that Plaintiffs failed to offer sufficient evidence on causation because they "failed to link *any* M2a Magnum design choice, much less a defective design choice, to Mrs. Bayes's claimed injuries." Doc. 439 at p. 21 (emphasis in original). The Court disagrees.

Dr. Kantor provided the following testimony illustrating how the metal-on-metal design choice caused Mrs. Bayes's injuries: 1) "[t]oxic metal ion debris generated by the bearing surface in her hip articulation" caused the failure of Mrs. Bayes's left and right hips, *see* Doc. 316 at 93:2–11; 2) referring to photographs of the injured tissue of Mrs. Bayes's left hip, "what you are seeing here is there is already damage. The metallosis, the debris, the toxic debris is wearing through the tensor fasciae latae[,]" *id*. at 105:4–6; 3) Mrs. Bayes had a pseudotumor in her left hip, which is an "invasive destructive tumor" caused by "the body's response to the

metal ions, which are destroying, at a cellular ion, the muscles, the tendons, the capsule, the ligaments as well as the bone of the hip articulation[,]" *id*. at 106:18–25; 4) he does not see the type of damage done to Mrs. Bayes when he does a metal-on-polythylene revision surgery, *id*. at 107:1–3; 5) that "toxic metal ion debris" caused Mrs. Bayes's left gluteus medius and minimus to be "diseased and in the process of dying," not component malpositioning, *id*. at 108:1–14; 6) Mrs. Bayes's left hip was placed at "approximately 39-degrees of inclination angle, with appropriate version,[1] appropriate length and restoration of the anatomy of the normal hip[,]" *id.,* at p. 94:6–12; and 7) he testified that Mrs. Bayes's right hip was removed because it became "symptomatic" damage beginning to occur. *Id*. at 119:9–21.

Dr. Lux expressed similar conclusions during his testimony. He testified that "the metal-on-metal hip is what caused all of the destruction," and that "the reason [Mrs. Bayes's hip] failed is because when metal rubs on metal, it creates particles, ions[.] . . . And these ions are toxic, [and] can damage the soft tissue around the hip . . ." Doc. 334 at 61:9–11, 55:12–17. Dr. Lux further testified that when he opened Mrs. Bayes's left hip, he saw metallosis, "the signature injury that you typically were [sic] encountering with the metal-on-metals[,]" and that you never see the "signature injury" of metallosis with the alternative ceramic-on-plastic or metal-on-plastic hip replacements because "that's only specific to metal-on-metal." *Id*. at pp. 84:3–7; 86:8–21.

Based on the testimony offered by Dr. Kantor and Dr. Lux, the Court concludes that Plaintiffs offered sufficient evidence for the jury to conclude that a design choice made by Biomet caused Mrs. Bayes's injuries. To the extent Biomet maintains that Plaintiffs' experts failed to appropriately account for the obvious alternative explanation of malpositioning when

---

[1] Other testimony in the record indicates that the witness may have meant "anteversion." Regardless, it does not affect the Court's analysis of the issues at hand.

testifying at trial, regardless of the truth of such a statement, Biomet merely rehashes arguments on competing theories of causation, which go to the weight of the evidence. Based on the verdict, the jury apparently found Plaintiffs' theory, supported by expert testimony, more weighty.

In its reply, Biomet effectively concedes that Plaintiffs offered evidence connecting a M2a Magnum design choice to Mrs. Bayes's injuries, *see* Doc. 456 at p. 11, but argues that "[t]his proof is necessary, but it is not sufficient . . . [A] plaintiff must *also* prove a causal link between the defendant's negligent *conduct* and the claimed injuries." *Id*. (emphasis in original). Accordingly, Biomet contends that Plaintiffs needed to offer evidence establishing that Biomet's failure to test caused Mrs. Bayes's injuries.

Courts generally do not review arguments first raised in a reply brief because the other party has not had adequate opportunity to respond to such arguments. *See Fish v. United States*, 748 F. App'x 91, 92 (8th Cir. 2019) (reply brief "too late to raise a new issue before the district court" (citing *McGhee v. Pottawattamie County*, *Iowa,* 547 F.3d 922, 929 (8th Cir. 2008); *cf. Hohn v. United States*, 193 F.3d 921, 923 n.2 (8th Cir. 1999)). Thus, the Court need not consider this argument. Moreover, even if the Court were to consider the argument, the Court would find that Plaintiffs offered sufficient evidence to establish that Biomet's negligence caused Mrs. Bayes's injuries.

Biomet correctly notes that Plaintiffs must establish that Biomet's "negligence 'directly caused' the harm, meaning [Mrs. Bayes] would not have been injured 'but for' the [M2a Magnum's] negligent design and [Biomet's] failure to test." *Bavlsik*, 870 F.3d at 807 (citing *Poage*, 523 S.W.3d at 508–09). Thus, to prove causation, Plaintiffs needed to "prove both that testing would have shown that [the M2a Magnum] did not provide adequate protection [for a hip

15

implant], and that testing would have prompted [Biomet] to explore and implement a safer design capable of preventing [Mrs. Bayes's] injuries." *Id*. "Like breach, causation 'is a factual question left for the jury.'" *Id*. (quoting *Poage*, 523 S.W.3d at 508).

Plaintiffs offered sufficient evidence from which the jury could infer that Biomet's negligence in failing to properly test the M2a Magnum caused Mrs. Bayes's injuries. Plaintiffs provided evidence that: 1) Biomet knew about the concerns many experts had with metal-on-metal hip implants, *see e.g.*, Doc. 330 at 41–43, 48:10–49:12, 52:12–54:6; 2) a "Consensus Document" setting forth a road map on how to bring a metal-on-metal implant to market emerged from a workshop attended by a hundred different researchers, clinicians, and industry representatives, Doc. 326 at pp. 253–256; Doc. 330 at 161:6–8; 3) Biomet failed to follow any of the steps provided in the "Consensus Document," Doc. 330 at 75:17–93:15; 111:1–3; 4) the results that came when the M2a Magnum appeared on the market mirrored the concerns expressed by the experts, Doc. 330 at pp. 111:13–112:5; and 5) the metal-on-polyethylene products already on the market did not have the same revision rate as the metal-on-metal devices. *Id*. at p. 105:21–23. In short, the evidence establishes a direct line that Biomet knew a problem existed, industry experts developed a path to account for this problem, Biomet failed to follow the path, and the expected result raised by the concerns came to fruition.

Accordingly, the Court concludes Plaintiffs offered sufficient evidence from which the jury could infer that Biomet's negligence caused Mrs. Bayes's injuries and thus denies Biomet's Renewed Motion for Judgment as a Matter of Law as to causation.

### C. Loss of consortium

Biomet argues that because Mrs. Bayes's claims fail as a matter of law, Mr. Bayes's loss-of-consortium claim necessarily fails as well. Having concluded that Biomet is not entitled to

judgment as a matter of law on any of Mrs. Bayes's claims, the Court likewise finds that Biomet is not entitled to judgment as a matter of law on Mr. Bayes's derivative loss-of-consortium claim. Doc. 357 at 46:1–8.

**IV.    Conclusion**

For all the reasons stated above, the Court denies Biomet's [438] Renewed Motion for Judgment as a Matter of Law.

So Ordered this 2nd day of August 2021.

*SL R. CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**